989 So.2d 603 (2006)
Joseph Wayne MADDEN
v.
STATE.
CR-04-1201.
Court of Criminal Appeals of Alabama.
February 3, 2006.
Rehearing Denied April 21, 2006.
Joseph Wayne Madden, pro se.
Troy King, atty. gen., and John M. Porter, asst. atty. gen., for appellee.

On Return to Remand
McMILLAN, Presiding Judge.
On March 18, 2005, Joseph Wayne Madden appealed the circuit court's denial of his Rule 32, Ala. R.Crim. P., petition. We remanded the case by order for the trial court to supplement the record on appeal with a number of omitted items. On September *604 30, 2005, the trial court filed its return, which contained the requested information.
In his Rule 32 petition, Madden challenged a 1983 guilty-plea conviction for three counts of receiving stolen property in the first degree. Madden contended that all three of the indictments were void because they did not allege that he "intentionally" received, retained, or disposed of the property in question. He reasserts this contention on appeal.
Copies of the indictments provided by the trial court all charge that Madden "did receive, retain, dispose of stolen property... knowing that it was stolen, having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation of Section 13A-8-17 the Code of Alabama." The property in the three cases was a 1982 Freightliner truck valued at $95,000, a 1978 Ford truck valued at $1,500, and a 1979 Ford F-150 truck valued at $1,500. When Madden was convicted in 1983, § 13A-8-17(a), Ala. Code 1975, provided that "[r]eceiving stolen property which exceeds $1,000.00 in value constitutes receiving stolen property in the first degree."[1]
Section 13A-8-16, Ala.Code 1975, provides, in pertinent part:
"A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner."
(Emphasis added.) In Cogman v. State, 870 So.2d 762 (Ala.Crim.App.2003), this court held that the defendant's indictment and conviction for receiving stolen property in the first degree were void because the indictment failed to charge him with "intentionally" receiving, retaining or disposing of the property in question. In Grant v. State, 904 So.2d 365 (Ala.Crim. App.2005), we reached a similar result with regard to the defendant's indictment and conviction for receiving stolen property in the second degree.
The State asks this court to revisit the Cogman and Grant decisions and find that the Cogman court's reliance on Ex parte Lewis, 811 So.2d 485 (Ala.2001), was misplaced. The State contends that the word "intentionally," which was added to the definition of the "receiving" offense in 1977, is surplusage because, if a person knows property is stolen, he cannot receive, retain, or dispose of that property without having criminal intent. The court argues that intent to cause injury was an essential element in Lewis because the offense in that case, second-degree assault, can result from non-intentional conduct.
The § 13A-8-16 Commentary explains the changes enacted in the 1977 Criminal Code provision, in pertinent part, as follows:
"The Criminal Code continues a receiving offense but clarifies and broadens it. `Property' is given an extensive definition as in theft of property. See § 13A-8-1(10). `Receiving' is defined as including `but is not limited to acquiring possession, control or title and taking a security interest in' property. Section 134A-8-1(11). The Criminal Code substitutes `retain or dispose' for `conceal.' Realistically, one might entertain the requisite intent and knowledge while controlling property received innocently, or when disposing of it. Under this *605 view, he is equally as culpable as one who buys the property with that knowledge. `Conceal' does not reach all of that conduct."
(Emphasis added.) This explanation is consistent with the holdings in Grant, Cogman, and Lewis. In Grant, 904 So.2d at 367-68, this court, quoting Cogman, 870 So.2d at 764-66, stated:
"`The Alabama Supreme Court addressed a similar problem in Ex parte Lewis, 811 So.2d 485 (Ala.2001). In Lewis, the indictment charging Lewis with second-degree assault did not include the essential element of "inten[ding] to cause physical injury," as required by § 13A-6-21(a)(2), Ala.Code 1975. The Alabama Supreme Court held that the indictment was void "for its failure to charge an essential element of that offense" and that "Lewis could not waive the defect...." 811 So.2d at 489. In so holding, the Alabama Supreme Court applied the following law and analysis:
"`"In Ivey v. State, 710 So.2d 946 (Ala.Crim.App.1998), the Court of Criminal Appeals reversed two convictions of assault in the second degree under § 13A-6-21(a)(4) because the jury had not been instructed that in order to convict the defendant it had to find that he intended to cause the physical injury. The jury was instructed only that it had to find that the defendant had intended to prevent a peace officer from performing a lawful duty and that the defendant had caused physical injury to a person. This instruction omitted an essential element of the charge. The Court of Criminal Appeals stated:
"`"`In the present case, the trial court's instruction failed to correctly define the offense of assault in the second degree because the instruction failed to include as an element of the offense that the defendant intended to cause physical injury and did cause physical injury to any person. Instead, the trial court inadvertently instructed the jury on the elements of third-degree assault. The incorrect instruction, in essence, allowed the jury to find the appellant guilty of second-degree assault under a lesser evidentiary standard than was required by law, and thereby lowered the state's burden of proof. Because the jury was incorrectly instructed concerning the elements of second-degree assault, the appellant's convictions for second-degree assault must be set aside."'"
"`"710 So.2d at 948.
"`"Failure to allege an essential element of the charged offense is a jurisdictional defect, and the failure to raise the defect at trial or on direct appeal does not constitute a waiver. Byrd v. State, 763 So.2d 987 (Ala. Crim.App.2000), citing Heidelberg v. State, 575 So.2d 621, 622 (Ala.Crim. App.1991). According to Ivey, intent to cause physical injury is an essential element of assault in the second degree under subsection (a)(4).
"`"In Barbee v. State, 417 So.2d 611 (Ala.Crim.App.1982), the Court of Criminal Appeals reversed a conviction for theft of property under § 13A-8-2, Ala.Code 1975, because the indictment failed to state the essential element of `intent to deprive the owner of his property.' The court stated:
"`"`Failure to charge an offense is the kind of defect involved in due process of law and it cannot be waived. Nelson v. State, 50 Ala.App. 285, 278 So.2d 734 (1973). Although *606 the law does not compel a "ritual of words" in an indictment, "[t]he omission of an element of the crime, however, is not a mere formality that may be waived." United States v. Purvis, 580 F.2d 853, 857, 858, rehearing denied, 585 F.2d 520 (5th Cir.1978), cert. denied, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979). "An indictment that fails to allege each material element of an offense fails to charge that offense." United States v. London, 550 F.2d 206, 211 (5th Cir.1977). "Failure to charge specific intent is but a particular aspect of the failure to charge an offense." Purvis, 580 F.2d at 858.'"'"
Madden's indictments omitted an essential element and permitted him to be convicted under a lesser evidentiary standard than required by law. Therefore, the judgment of the trial court must be reversed and this cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB, J., concurs; SHAW, J., concurs in result; WISE, J., dissents, with opinion, in which COBB, J., joins.
WISE, Judge, dissenting.
The main decision reverses the circuit court's denial of Madden's Rule 32, Ala. R.Crim.P., petition and grants Madden relief on his claim that the circuit court lacked jurisdiction to render judgment or to impose sentence on his 1983 guilty-plea convictions for receiving stolen property in the first degree. Specifically, Madden claimed that indictments charging him with first-degree receiving stolen property were void because they did not allege an essential element of the charged offense. In my opinion, this Court's determination that Madden is entitled to relief is premature, given that the State has not yet been afforded an opportunity to respond to the merits of Madden's claim.
Based on my examination of the record on appeal, Madden's appeal was submitted for review on June 29, 2005. The State's brief maintained that remand was necessary to determine whether the circuit court had ruled on Madden's request to proceed in forma pauperis. Additionally, the State requested that the record be supplemented with a copy of Madden's original Rule 32 petition that he filed in August 2004, because no copy of that petition was included in the record on appeal.[2] Given this omission from the record, the State's brief understandably did not address the merits of Madden's appellate claims. By order on August 16, 2005, this Court remanded Madden's case for the circuit court to determine whether a ruling on Madden's request to proceed in forma pauperis had been entered and further for the record to be supplemented with a copy of Madden's Rule 32 petition. Thereafter, the circuit clerk filed a record on return to remand, and on October 4, 2005, Madden's case was resubmitted for review.
*607 Because the State was unable to determine precisely what claims Madden raised in his petition until the record on return to remand was filed on September 29, 2005, I believe that the State should now be permitted to file a supplemental brief addressing the merits of Madden's claims. It may well be that Madden is entitled to relief as a result of the claims asserted in his petition for postconviction relief. However, the State should be given an opportunity to respond to Madden's claims before we determine whether the requested relief is warranted. Therefore, I must respectfully dissent.
NOTES
[1] The statute was amended, effective September 1, 2003, to substitute "two thousand five hundred dollars ($2,500)" for "$1,000.00."
[2] The original record on appeal appears to contain a portion of a Rule 32 petition bearing a stamped filing date of March 8, 2005. Additionally, the record includes exhibits that appear to date from a 2003 filing by Madden  possibly another Rule 32 petition. Finally, the record includes a copy of Madden's February 2005 petition for a writ of mandamus against the circuit judge to whom Madden's case was assigned. However, no copy of the August 2004 petition upon which this Court's ruling is based appears to have been included in the record supplied to the parties and this Court. Indeed, Madden's own motion to supplement or correct the record, filed in the circuit court on May 26, 2005, contends as much. Despite the circuit court's grant of Madden's motion to supplement, however, the supplemental record filed in this Court on May 27, 2005, also fails to contain a copy of Madden's August 2004 petition.